UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CR-214-BO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHABAZZ M. JENKINS | MOTION TO DISMISS |

Defendant Shabazz M. Jenkins, by and through undersigned counsel, moves to dismiss the indictment because the statute under which he is charged, 18 U.S.C. § 922(g)(1), is unconstitutional both on its face and as applied to him following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In support, Mr. Jenkins states as follows:

**PROCEDURAL HISTORY**

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2131 (2022), the Supreme Court set forth a text-and-history approach for considering Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government "must then justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation." *N. Bruen*, 142 S. Ct. at 2131. Since that decision, Section 922(g)(1) has been declared unconstitutional in four courts across the country: the Third Circuit, sitting *en banc*, in *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (en banc); the Northern District of Oklahoma, in *United States v. Forbis*, No. 4:23-CR-133-GKF at Docket Entry 37 (N.D. Okla. Aug. 17, 2023) (Exhibit 1); the Southern District of Mississippi, in *United States v. Bullock,* No. 3:18-CR-165-CWR-FK, 2023 WL 4232309 (S.D. Miss. Jun. 28, 2023); and the

- 1 -

Middle District of Pennsylvania, in *United States v. Quailes*, No. 1:21-CR-176-JPW, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023).

On July 5, 2023, the government charged Mr. Jenkins with a single violation of 18 U.S.C. § 922(g)(1). He now moves to dismiss.

## ARGUMENT

**I.     Section 922(g)(1) is unconstitutional as applied to Mr. Jenkins.**

The Second Amendment protects the right of "the people" to "keep and bear Arms." U.S. Const. amend. II. Section 922(g)(1), however, makes it unlawful for "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). As the Third Circuit recently made clear in *Range.*, 69 F.4th at 103, Mr. Jenkins is a member of "the people," and the conduct proscribed by Section 922(g)(1) is protected by the Second Amendment. The government therefore bears the burden to establish a robust tradition of founding-era firearm regulation sufficiently similar to Section 922(g)(1). *Bruen*, 142 S. Ct. at 2131, 2136. But, as *Range* reflects, the government will not be able to identify a longstanding historical tradition of disarming "people like" Mr. Jenkins. *Range*, 69 F.4th at 106. The indictment must be dismissed.

      **A.     *Bruen* held that the Second Amendment requires a text-and-history approach.**

In *Bruen*, the Supreme Court rejected the means-end scrutiny that lower courts had previously applied in Second Amendment cases. Instead, the Supreme Court held that the Second Amendment requires a text-and-history analysis. As the Third Circuit recently explained, "[a]fter *Bruen*, we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct." *Range,* 69 F.4th at 101. "If it does, the

- 2 -

Case 5:23-cr-00214-BO-RJ   Document 18   Filed 08/31/23   Page 2 of 8

government now bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* (quoting *Bruen*, 142 S. Ct. at 2127). "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S. Ct. at 2126 (internal quotation marks omitted).

> **B.** **The plain text of the Second Amendment covers Mr. Jenkins and the conduct criminalized by Section 922(g)(1).**

The threshold question under *Bruen* is "whether the text of the Second Amendment applies to a person and his proposed conduct." *Range*, 69 F.4th at 101. Mr. Jenkins is, like all Americans, one of the "the people" whom the Second Amendment protects. *Id.* at 101-03. Further, the conduct prohibited by Section 922(g)(1)—possession of a firearm—falls squarely within the heartland of the Second Amendment. *See id.* at 103. As a result, "the Constitution presumptively protects that conduct." *Id.*

> **C.** **The government cannot prove that Section 922(g)(1)'s application to Mr. Jenkins is consistent with this Nation's historical tradition of firearm regulation.**

Because the Second Amendment covers Mr. Jenkins and the conduct barred by Section 922(g)(1), the government has the burden to "affirmatively prove" that 922(g)(1)'s application to Mr. Jenkins "'is consistent with the Nation's historical tradition of firearm regulation.'" *Range*, 69 F.4th at 96, 101. In other words, "[t]o preclude [Mr. Jenkins] from possessing firearms, the [g]overnment must show that § 922(g)(1), as applied to him, is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 103 (internal quotation marks omitted). It cannot.

To establish that a law is "consistent with the Nation's historical tradition of firearm regulation," *Bruen*, 142 S. Ct. at 2130, the government must prove one of two things, depending on whether the problem addressed by the law is old or new. On one hand, if "a challenged regulation addresses a general societal problem that has persisted since the 18th century," the government must identify a tradition of "distinctly similar" founding-era regulations. *Id.* at 2131; *see also Range*, 69 F.4th at 103. On the other hand, if a regulation addresses a problem that was "unimaginable at the founding," the government may instead "reason[] by analogy" and prove that the regulation is "relevantly similar" to founding-era historical analogues. *Bruen*, 142 S. Ct. at 2132; *see also Range*, 69 F.4th at 103.

Because Section 922(g)(1) does not address a problem that was unimaginable at the founding, the government bears the burden to identify *distinctly* similar founding-era regulations. But regardless of which burden it bears, the government will not be able to identify any tradition of firearm regulation similar to Section 922(g)(1)'s application here. The Court should grant this motion and dismiss the indictment with prejudice.

**II.    Section 922(g)(1) is facially unconstitutional.**

Although the Court could confine its analysis to the statute's constitutionality "as applied" to people like Mr. Jenkins, Section 922(g)(1) is also unconstitutional on its face.

    **A.    Section 922(g)(1) is unconstitutional under the Second Amendment in all its applications.**

A faithful application of *Bruen* compels the conclusion that Section 922(g)(1) is unconstitutional on its face. As discussed above, because the Second Amendment's text covers the conduct proscribed by Section 922(g)(1), the government bears the burden of establishing a founding-era tradition of disarming individuals with felony convictions. *Range*, 69 F.4th at 101. Put simply, "there are *no* examples of founding, antebellum, or Reconstruction-era federal laws

like 18 U.S.C. § 922(g)(1) permanently disarming non-capital criminals." *Range*, 69 F.4th at 106 (Porter, J., concurring) (emphasis added); *see also*, *e.g.*, *Binderup v. Attorney General*, 836 F.3d 336, 368 (3d Cir. 2016) (Hardiman, J., concurring, joined by Fisher, Chagares, Jordan, and Nygaard, JJ.) ("[T]he Founding generation had no laws denying the right to keep and bear arms to people convicted of crimes[.]") (original alteration marks and citation omitted).

Because there is no founding-era history of disarming people convicted of felonies at all, Section 922(g)(1) "is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). The history will not change from case-to-case. *See Range*, 69 F.4th at 116 & n.5 (Shwartz, J., dissenting, joined by Restrepo, J.) (stating that majority's approach "rejects all historical support for disarming any felon," dictating conclusion that "bans on violent felons cannot be justified"). And while *Bruen* may not demand a "historical twin" for Section 922(g)(1), *see* 142 S. Ct. at 2133, the government has yet to find so much as a long-lost cousin. This Court should recognize that reality and hold that the statute is unconstitutional on its face.

### B. Section 922(g)(1) is unconstitutionally vague.

If this Court were to conclude (notwithstanding the above) that Section 922(g)(1) is not unconstitutional in all applications, the statute then runs into another fatal constitutional flaw: vagueness. After *Range*, Section 922(g)(1) can no longer criminalize much of the conduct it purports to outlaw. Indeed, it must now be recognized that there are numerous Americans who fall within the text of the statute because they have previously been convicted of "a crime punishable by imprisonment for a term exceeding one year," but who cannot be disarmed consistent with the Second Amendment. See *Range*, 69 F.4th at 133 (Krause, J., dissenting) ("Under the majority's 'like Range' test … offenders cannot possibly know in advance of a court's retroactive declaration whether possessing a firearm post-conviction is a constitutional

entitlement or a federal felony. As interpreted today by the majority, § 922(g)(1) is rendered so vague as to be facially unconstitutional.").

"In our constitutional order, a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). The Constitution requires that federal criminal laws "give ordinary people fair warning about what the law demands of them." *Id.* Section 922(g)(1) does not, because it criminalizes reams of constitutionally protected conduct alongside whatever conduct might arguably be unprotected while providing no guidance for discerning which is which. Where can "ordinary people" with a past criminal conviction look for a "sure way to know" if possessing a gun will expose them to criminal punishment? *Id.* Not to the statute's text: *Bruen* and *Range* make clear that the statute cannot constitutionally be applied as written. Case law likewise provides no guidance: insofar as Section 922(g)(1) is not facially unconstitutional, *Range* requires courts to engage in case-by-case, crime-by-crime reasoning to determine whether the person before them is "like Range." *Range*, 69 F.4th at 106.

The consequence is straightforward: The Court must "treat [Section 922(g)(1)] as a nullity and invite Congress to try again." *Davis*, 139 S. Ct. at 2323.

### C. The Supreme Court should revisit its post-New Deal precedent straying from the Commerce Clause's original public meaning.

Finally, as Judge Porter's concurrence in *Range* suggests, the federal government's claimed authority to regulate guns depends on an expansive view of Congress's Commerce Clause power that has little to do with commerce and was largely invented by courts in the post-New Deal era. *See Range,* 69 F.4th at 107-09 (Porter, J. concurring). Admittedly, the Supreme Court's New Deal precedents and their progeny continue to foreclose this Court from second-guessing these decisions' broad view of Congress's power to regulate commerce. *See, e.g., NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937). But the Supreme Court has, in more

recent decades, gestured toward a more restrained approach. *See, e.g., United States v. Lopez*, 514 U.S. 549 (1995); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 552 (2012); *see also Alderman v. United States*, 131 S. Ct. 700, 701 (2011) (Thomas, J., joined by Scalia, J., dissenting from denial of certiorari) (urging reconsideration of 1977 decision upholding Congress's authority under Commerce Clause to enact precursor of Section 922(g)). Because the Supreme Court could one day "temper" its post-New Deal precedent, Mr. Jenkins asserts for preservation purposes that Section 922(g)(1) is inconsistent with the original public meaning of the Constitution's Commerce Clause. *Lopez*, 514 U.S. at 584-85 (Thomas, J. concurring); *see also Range,* 69 F.4th at 107-09 (Porter, J. concurring).

## CONCLUSION

For the foregoing reasons, the indictment charging Mr. Jenkins with a violation of 18 U.S.C. § 922(g)(1) should be dismissed.

Respectfully requested this 31st day of August, 2023.

> G. ALAN DUBOIS
> Federal Public Defender
>
> */s/ Halerie M. Costello*
> HALERIE M. COSTELLO
> Assistant Federal Public Defender
> Attorney for Defendant
> Office of the Federal Public Defender
> 150 Fayetteville Street, Suite 450
> Raleigh, North Carolina 27601
> Telephone: 919-856-4236
> Fax: 919-856-4477
> E-mail: Halerie_Costello@fd.org
> N.C. State Bar No. 43030
> LR 57.1 Counsel Appointed

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

SARAH E. NOKES
Assistant United States Attorney
United States Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on August 31, 2023, using the CM/ECF system which will send notification of such filing to the above.

This the 31st day of August, 2023.

>*/s/ Halerie M. Costello*
>HALERIE M. COSTELLO
>Assistant Federal Public Defender
>Attorney for Defendant
>Office of the Federal Public Defender
>150 Fayetteville Street, Suite 450
>Raleigh, North Carolina 27601
>Telephone: 919-856-4236
>Fax: 919-856-4477
>E-mail: Halerie_Costello@fd.org
>N.C. State Bar No. 43030
>LR 57.1 Counsel Appointed