IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIAM JAMES FORBIS,

    Defendant.

Case No. 23-CR-133-GKF

**ORDER**

Before the court is the defendant's Motion to Dismiss Indictment pursuant to Fed. R. Civ. P. 12(b)(3)(B)(v) for failure to state an offense. [Doc. 24]. Defendant raises two arguments. First, he contends that 18 U.S.C. § 922(g)(1) is facially unconstitutional as a violation of the Second Amendment. Second, he argues that § 922(g)(1) is unconstitutional as applied because his prior felony convictions are not the kind of convictions that find historical support for the complete and perpetual disarmament of persons protected by the Second Amendment. For the reasons set forth below, the court denies defendant's facial challenge, but grants the motion to dismiss because the government has not met its burden to show that the convictions listed in the Indictment support a § 922(g)(1) charge "consistent with the Nation's historical tradition of firearm regulation."

**I. Background**

On April 5, 2023, a grand jury returned an Indictment charging William James Forbis with one count of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). The grand jury charged that Mr. Forbis had previously been convicted of three crimes punishable by imprisonment for terms exceeding one year:

> 1. Unlawful Possession of Methamphetamine, Case No. CF-98-159, in the District Court of Ottawa County, State of Oklahoma, on August 17, 1998;
>
> 2. Driving Under the Influence 2nd and Subsequent Offense, Case No. CF-2004-243, in the District Court of Ottawa County, State of Oklahoma, on November 3, 2004; and
>
> 3. Possession of a Controlled Dangerous Substance Methamphetamine, Case No. CF-2016-499A, in the District Court of Ottawa County, State of Oklahoma, on March 16, 2018.

[*Id.*].[1]

Section 922(g)(1) provides: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." The Indictment charges that Mr. Forbis, knowing that he had previously been convicted of at least one of the crimes listed above, knowingly possessed a Llama Model IIIA .380 AUTO caliber pistol with the serial number obliterated and six rounds of Federal .380 AUTO caliber ammunition. [Doc. 2].

## II. The Second Amendment

### A. The Bruen Decision

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), the U.S. Supreme Court considered a constitutional challenge to New York's firearm licensing regime, which required a person seeking to carry a firearm outside of the home to demonstrate that "proper cause exists" to issue the license. *Bruen*, 142 S.Ct. 2122-23 (citing N.Y. Penal Law Ann. § 400.00). The statute did not define "proper cause," but New York courts interpreted the standard

---

[1] "Where a defendant challenges the sufficiency of an indictment for failure to state an offense, a court generally is bound by the factual allegations contained within the four corners of the indictment." *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003). In its response to the motion, the government states that the defendant was convicted in 2009 of a fourth felony—Larceny of an Automobile. This court is bound by the allegations of the Indictment, and therefore will not address or consider the prior conviction alleged in the response brief but uncharged by the Grand Jury.

to require the applicant to "demonstrate a special need for self-protection distinguishable from that of the general community." *Bruen*, 142 S.Ct. at 2123 (*citing In re Klenosky v. N.Y.C. Police Dep't*, 428 N.Y.S.2d 256, 257 (1980)). In considering the constitutionality of the New York licensing regime, the Court cited its prior holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), that "the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense," and noted that, "[i]n the years since, the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen*, 142 S.Ct. at 2125. Pursuant to that framework, at the first step, the government bore the burden to "justify its regulation by 'establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.'" *Id.* at 2126 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). If "the regulated conduct f[ell] beyond the Amendment's original scope," then the analysis ended. *Bruen*, 142 S.Ct. at 2126. However, if the historical evidence was inconclusive or the regulated conduct was not categorically excluded, courts proceeded to the second step, which generally involved analysis of "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (quoting *Kanter*, 919 F.3d at 441). If the "core" of the Second Amendment right was burdened, courts applied "strict scrutiny," requiring the government to prove the law "[was] narrowly tailored to achieve a compelling governmental interest." *Bruen*, 142 S.Ct. at 2126. "Otherwise, they appl[ied] intermediate scrutiny and consider[ed] whether the Government c[ould] show that the regulation [was] 'substantially related to the achievement of an important governmental interest.'" *Bruen*, 142 S.Ct. at 2126 (quoting *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012)).

In rejecting the two-part means-end test, the Court characterized it as "one step too many." *Bruen*, 142 S.Ct. at 2127. The Court noted that, while step one "is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history," the second step was inconsistent with its prior decisions in *Heller* and *McDonald*. *Bruen*, 142 S.Ct. at 2127. Instead, the Court articulated the relevant inquiry succinctly: "[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* The Court expanded on the analysis, stating,

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S.Ct. at 2129-30. Thus, the test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131.

To determine whether a firearms regulation is "consistent with the Nation's historical tradition of firearm regulation," district courts should consider "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 2131-32. The inquiry will often require "reasoning by analogy." *Id.* at 2132. "Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar,'" including both in "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33. Because self-defense lies at the core of the Second Amendment, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *'central'*

4

considerations when engaging in an analogical inquiry." *Bruen*, 142 S.Ct. at 2133 (emphasis in original) (quoting *McDonald*, 561 U.S. at 767). Significantly, however, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen*, 142 S.Ct. at 2133 (emphasis in original).

Further, "when it comes to interpreting the Constitution, not all history is created equal." *Bruen*, 142 S.Ct. at 2136. This is because "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Bruen*, 142 S.Ct. at 2136 (quoting *Heller*, 554 U.S. at 634-35) (emphasis in original). But the Court acknowledged that subsequent history may be relevant to the inquiry as "'a regular course of practice' can 'liquidate & settle the meaning of' disputed or indeterminate 'terms & phrases' in the Constitution." *Bruen*, 142 S.Ct. at 2136 (quoting *Chiafalo v. Washington*, 140 S.Ct. 2316, 2326 (2020)). However, "to the extent later history contradicts what the text says, the text controls." *Bruen*, 142 S.Ct. at 2137. Applying these principles, the Court concluded that the New York licensing regime was unconstitutional in that it "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Bruen*, 142 S.Ct. at 2156.

B. *The Second Amendment's Plain Text Covers Mr. Forbis's Conduct*

Pursuant to *Bruen*, the court first considers whether the Second Amendment's plain text covers Mr. Forbis's conduct. If so, "the Constitution presumptively protects [his] conduct." *Bruen*, 142 S.Ct. at 2129-30.

The government contends that the relevant conduct is the possession of a firearm by a convicted felon. [Doc. 29, p. 4]. But such an approach conflates *Bruen's* first step with its second. This court has previously concluded that convicted felons fall within "the people" as contemplated by the First and Fourth Amendments and declined to carve out felons from the scope of the Second

5

Amendment's protection of "the people." *United States v. Coombes*, 629 F. Supp. 3d 1149, 1156 (N.D. Okla. 2022); *see United States v. Mayfield*, No. 22-CR-00242-GKF, 2023 WL 2386322, at *3 (N.D. Okla. Mar. 6, 2023). Other courts inside and outside the Tenth Circuit have agreed. *See e.g., United States v. Gray*, No. 22-CR-00247-CNS, 2022 WL 16855696, at *2 (D. Colo. Nov. 10, 2022); *United States v. Carrero*, 635 F. Supp. 3d 1210, 1212 (D. Utah Oct. 14, 2022). *Accord. United States v. Rahimi*, 61 F. 4th 443, 451-53 (5th Cir. 2023), *cert. granted*, Case No. 22-915 ("the Second Amendment right is exercised individually and belongs to all Americans") (quoting *Heller*, 554 U.S. at 581).

Because Mr. Forbis is one of "the people," the court looks next to the charged conduct to determine whether it is covered by the Second Amendment's plain text. Mr. Forbis is charged under a statute that criminalizes the mere possession of a firearm and ammunition. As a result, when analyzing § 922(g)(1), the relevant conduct is possessing a firearm and ammunition. The Second Amendment protects the acts of "keep[ing]" and "bear[ing]" arms. *Bruen*, 142 S.Ct. at 2134. By possessing the pistol and ammunition, Mr. Forbis "kept" the weapon. *See Heller*, 554 U.S. at 582-83 ("[T]he most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons' . . . '[k]eep arms' was simply a common way of referring to possessing arms, for militiamen *and everyone else*.") (emphasis in original). The government attempts to add a historical tradition burden into *Bruen's* first step by discussing the purported historical tradition of regulating firearm use by felons, non-law-abiding citizens, non-conformists, the mentally ill, and other classes of people. "But *Bruen* makes clear that the first step is one based solely on the text of the Second Amendment to determine if it presumptively protects an individual's conduct—a presumption that the United States can *then* rebut with history and tradition." *United States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *4 (W.D. Okla. Feb. 3, 2023) (emphasis

in original).  Here, the Second Amendment presumptively protects Mr. Forbis's conduct, and the government must "justify [§ 922(g)(1)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2130.

### C. The Nation's Historical Tradition of Firearm Regulation

When the plain text of the Second Amendment covers an individual's conduct, the government must demonstrate that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.*

#### 1. The Facial Challenge

In *Coombes*, this court looked to the historical evidence and concluded that § 922(g)(1)'s prohibition of possession of firearms by persons convicted of a crime punishable by a term of imprisonment exceeding one year is "consistent with the Nation's historical tradition of firearm regulation" and that § 922(g)(1) is not unconstitutional on its face. *Coombes*, 629 F. Supp. 3d at 1156-62. *See also Carrero*, 635 F. Supp. 3d at 1214-15 (collecting post-*Bruen* cases from inside and outside the Tenth Circuit holding § 922(g)(1) constitutional on its face). The court incorporates and reaffirms its prior conclusion that § 922(g)(1) is not unconstitutional on its face.

#### 2. The As-Applied Challenge

Mr. Forbis also brings an as-applied challenge to § 922(g)(1). The distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 130 S.Ct. 876, 893 (2010). "[I]t does not speak at all to the substantive rule of law necessary to establish a constitutional violation," and therefore the same substantive constitutional analysis applies. *Bucklew v. Precythe*, 139 S.Ct. 1112, 1127 (2019). *See also Gross v. United States*, 771 F.3d 10, 14-15 (D.C. Cir. 2014) ("[T]he substantive rule of law is the same for both challenges."). Accordingly, the court must consider whether § 922(g)(1) as

7

Case 5:23-cr-00214-BO-RJ   Document 18-1   Filed 08/31/23   Page 7 of 12

applied to Mr. Forbis's in the instant Indictment is consistent with the Second Amendment's text and historical understanding. *Bruen*, 142 S.Ct. at 2131.

The government cites *United States v. Baker*, Case No. 20-cr-301-DBB, 2022 WL 16855423 (D. Utah Nov. 10, 2022), an as-applied challenge to the constitutionality of § 922(g)(1), for the proposition that *Bruen* did not overrule existing Tenth Circuit case law on the constitutionality of § 922(g)(1). But in *United States v. Jackson*, 622 F. Supp. 3d 1063, 1065 (W.D. Okla. 2022), Chief Judge Timothy DeGiusti concluded that *Bruen* constitutes an intervening decision that relieves a district court of its obligation to follow Tenth Circuit authority, as it is an intervening Supreme Court decision "that is contrary to or invalidates [the Circuit's] previous analysis." *See United States v. Doe*, 865 F.3d 1295, 1298-99 (10th Cir. 2017). This court concurs with Chief Judge DeGiusti.

As described above, the Second Amendment presumptively protects Mr. Forbis's conduct of possessing a firearm and ammunition. The government therefore has the burden to justify the application of § 922(g)(1) to the prior felonies listed in the Indictment "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2130.

To determine whether a regulation is "consistent with the Nation's historical tradition of firearm regulation," district courts should consider "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 2131-32. The inquiry will often require "reasoning by analogy." *Id.* at 2132. Significantly, however, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue,* not a historical *twin*." *Bruen*, 142 S.Ct. at 2133 (emphasis in original).

The government's conclusion that "Forbis fails to demonstrate that § 922(g)(1) is unconstitutional as applied to him," [Doc. 29, p. 15], misplaces the burden here. Because the Second Amendment presumptively protects Mr. Forbis's conduct, it is the government's burden to show that applying § 922(g)(1) in these circumstances is "consistent with the Nation's historical tradition of firearm regulation."

The government first argues that Mr. Forbis's "as-applied challenge to § 922(g)(1) fails because his convictions fail to separate him from the general class of felons who could historically be stripped of gun rights." [Doc. 29, p. 12]. Simply lumping all felons together is insufficient to satisfy the government's burden in this as-applied challenge. *See Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 102 (3rd Cir. 2023) ("At English common law, felonies were so serious they were punishable by estate forfeiture and even death. 4 William Blackstone, Commentaries on the Laws of England 54 (1769). But today, felonies include a wide swath of crimes, some of which seem minor. And some misdemeanors seem serious. As the Supreme Court noted recently: 'a felon is not always more dangerous than a misdemeanant.'" (quoting *Lange v. California*, ─── U.S. ───, 141 S.Ct. 2011, 2020, 210 L.Ed.2d 486 (2021)) (cleaned up in original).

Admittedly, dicta in *Heller* states that "nothing in our opinion should be taken to cast doubt on *longstanding*[2] prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626 (emphasis added). But the Court "did not place an absolute stamp of approval on such prohibitions: those prohibitions are merely 'presumptively lawful,' implying that some could be unconstitutional in some circumstances." *Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *10. *Accord*

---

[2] *See United States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *10 n.52 (W.D. Okla. Feb. 3, 2023) (citing *Folajtar v. Att'y Gen. United States of Am.*, 980 F.3d 897, 913 (3d Cir. 2020) (Bibas, J., dissenting)) ("*Heller* limited its remark to 'longstanding' bans. Longstanding bans are centuries old, not within living memory.").

*United States v. McCane*, 573 F.3d 1037, 1048–49 (10th Cir. 2009) ("[T]he broad scope of 18 U.S.C. § 922(g)(1)—which *permanently* disqualifies *all* felons from possessing firearms—would conflict with the "core" self-defense right embodied in the Second Amendment.") (Tymkovich, J., concurring) (emphasis in original). Upon review of the arguments and authorities raised by the government, the court finds and concludes that the government does not show how applying § 922(g)(1) based upon the convictions contained in the Indictment is "consistent with the Nation's historical tradition of firearm regulation." *See United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *31 (S.D. Miss. June 28, 2023) ("[T]he government put forth no effort to ground in history the present charges it brought again him. That is what *Bruen* requires.").

The government argues that Mr. Forbis classifying his underlying felonies as non-violent "does not exempt him from the general constitutionality of § 922(g)(1)." [Doc. 29, p. 13]. In support, the government directs the court to its decision in *Coombes*. In that case, the defendant contended that felon disarmament laws can only be constitutional to those with violent felony convictions. Because Mr. Coombes had been convicted of burglary, and burglary had historically been treated as a crime of violence, the court concluded that § 922(g)(1) was not unconstitutional as applied to Mr. Coombes. *Coombes*, 629 F. Supp. 3d at 1163. *Coombes* is not applicable here because the government does not argue Mr. Forbis's prior convictions were for violent crimes.

Finally, the government contends that Mr. Forbis's prior convictions "demonstrate that allowing him to possess a gun would pose a danger to public safety." [Doc. 29, p. 14]. In support, the government points to Supreme Court opinions describing drunk driving as "an extremely dangerous crime" and describing recidivist drunk drivers as "the most dangerous offenders." The government includes National Highway Traffic Safety Administration (NHTSA) statistics that intoxicated drivers account for over 30% of traffic fatalities. With respect to Mr. Forbis's prior

convictions for possession of methamphetamine, the government references a Bureau of Justice statistic that "[a]s many as 18% of federal inmates claim to have committed their offenses to obtain money for drugs."

The government's arguments regarding the dangerousness of drunk drivers and drug users do not address the relevant inquiry required by *Bruen*: whether permanently dispossessing Mr. Forbis based on the prior convictions listed in the Indictment is "consistent with the Nation's historical tradition of firearm regulation."

Although our Nation's history and tradition "does not support disarming a person merely because they have engaged in felonious conduct, it does support a different proposition: 'that the legislature may disarm those who have demonstrated a proclivity for violence' through past violent, forceful, or threatening conduct (or past attempts at such conduct)." *Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *15 (quoting *Kanter*, 919 F.3d at 454) (Barrett, J., dissenting). "Or, to put it another way, 'the historical record' demonstrates 'that the public understanding of the scope of the Second Amendment was tethered to the principle that the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public *if armed*.'" *Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *15 (quoting *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336, 369 (3d Cir. 2016) (Hardiman, J., concurring in part & concurring in judgments)) (emphasis added). The government presents no evidence that any prior conviction listed in the Indictment shows that Mr. Forbis is a danger to the public if armed.

The government also misses the mark with its argument that Mr. Forbis's convictions for drug possession "flag him as having an above average chance of committing further crimes." [Doc. 29, p. 14]. *See also United States v. Goins*, No. 522CR00091GFVTMAS1, 2022 WL 17836677, at *13 (E.D. Ky. Dec. 21, 2022). By relying on such predictions about future crime, the government

11

is asking the court to engage in the type of interest-balancing *Bruen* rejected.  *See Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *18  ("The Second Amendment demands more than the United States' interest-balancing approach that is based on speculative assessments of future risk . . . .").  Further, such predictions are unmoored from the Nation's history and tradition, unrelated to Mr. Forbis's past conduct, and unrelated to his possession of a firearm.  "[S]tripping a person's fundamental rights based on projected crimes untethered from past dangerous actions is a risky game indeed."  *Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *18 (quoting *Folajtar v. Att'y Gen. United States of Am.*, 980 F.3d 897, 923 (3d Cir. 2020) (Bibas, J., dissenting)) (emphasis omitted).

*Bruen* requires that the government must meet its burden to show that the prior convictions listed in an Indictment support a § 922(g)(1) charge "consistent with the Nation's historical tradition of firearm regulation."  The court finds that it has not done so in this case.

WHEREFORE, the Motion of defendant William James Forbis to Dismiss the Indictment for Failure to State an Offense [Doc. 24] is granted.

IT IS SO ORDERED this 17th day of August 2023.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE